# THE CITY OF GALESBURG
## v.
# HAZEN H. HALL.

*Municipal Corporations—Negligence of—Personal Injuries—Fall into Ditch in City Street—Contributory Negligence—Instructions—Evidence.*

1. In an action brought against a municipality to recover for an injury received through falling into an open ditch, where there was evidence tending to show that plaintiff knew of the opening in the street into which he fell, this court holds that it was error to tell the jury without qualification that the plaintiff had the right to presume, in the absence of proper signals, that the street and sidewalk were in reasonably safe condition.

2. Where a plaintiff in such case was disabled from pursuing his regular employment by the injury complained of, it is proper for evidence to be given as to his average earnings in his regular employment, although at the time of the injury he was temporarily engaged in other work.

3. Where there is a question in issue as to the condition of a street light at the time and place of the accident, evidence tending to show a general neglect by defendant of a neighboring light, is not competent.

[Opinion filed December 12, 1892.]

APPEAL from the Circuit Court of Knox County; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. E. W. WELCH, City Attorney, and WILLIAMS, LAWRENCE & BANCROFT, for appellant.

Mr. GEORGE W. THOMPSON, for appellee.

MR. JUSTICE CARTWRIGHT. This is a suit by appellee against appellant to recover damages for injuries sustained by falling into a ditch dug by appellant in Monmouth street in Galesburg for the purpose of laying a sewer. The negligence charged in the declaration consisted in digging the

City of Galesburg v. Hall.

ditch and leaving it in the night time unguarded and without danger signals. Appellee obtained a verdict for $450, on which judgment was entered.

The evidence showed that appellant was laying a sewer on the southerly side of Monmouth street, and for that purpose dug a ditch six feet deep. The ditch was dug as the work progressed and was filled as fast as the tile was laid, leaving it open necessarily for a short distance at the end of the tile. The work was progressing southwesterly along the street which ran in that direction and was approaching the residence of appellee, which was on the north side of the street, and tile was scattered at places along the street. There was a brick sidewalk on the south side of the street, four feet wide, and a terrace of about the same width north of the walk. The ditch was from fifteen to eighteen inches wide, and was dug about eighteen inches from the walk, and the dirt was thrown mainly on the north side of the ditch. Appellee was a locomotive fireman, and his hours of work were from seven in the morning to seven in the evening. He usually left home about 6:30 in the morning and returned after his day's work. He knew that a sewer was being put in and that it was working down toward the place where he lived, and the work being done was visible on the street, as it progressed from day to day. On the evening of August 30, 1889, at about nine o'clock, he came upon the walk on the south side of the street a short distance easterly from his residence and on the opposite side of the street and started along the walk intending to go home. The digging of the ditch had reached that locality, and he had gone but a rod or two when he stepped into the ditch, which was open for a short distance. His knee was injured so as to incapacitate him for a time from following his usual employment. No special means had been employed by appellant to keep persons from falling into the ditch, nor did the law require that any particular method should be adopted for that purpose. The law required that the street should be kept reasonably safe for persons using ordinary care, leaving the selection of methods to appellant.

The question in the case was whether that duty had been performed by the adoption of some suitable means. At the intersection of Monmouth street and Henderson street, which was the next crossing southwesterly from the scene of the accident, appellant had provided an electric light, hung about sixteen feet from the ground, in the center of Monmouth street, which was burning brightly. There was no obstruction to the light, and it shone plainly on the whole street. Appellee was going toward that light, and he testified that it shone in his eyes and dazzled him so that he could not see anything on the ground without shading his eyes. He was unable, he said, to see the ditch or anything else at his feet without shading his eyes, and consequently wandered off from the brick sidewalk upon the ground and into the ditch. Other witnesses testified that the effect of the electric light was to dazzle the eyes and blind a person to objects in the street unless the eyes were shaded. It seems that the light was sufficient to show the ditch to any ordinary observer if the eyes were protected so that the light would not shine directly in them. The real complaint was not that appellant did not furnish light enough to show the condition of the street to persons passing along it, but that it furnished a light that was too brilliant and dazzling. It is at least questionable whether the city had failed in its duty when it had furnished a light of sufficient power and illuminating capacity, and the only objection was one which every person using the street had the means at hand to obviate. If the correct conclusion on the question of fact in such a case is that the city is negligent, and that the individual who fails to use the means he has to make the light effectual, is in the exercise of ordinary care, then some kinds of electric lights would have to be abandoned and some soft and mellow light substituted. Appellee intended to go along the sidewalk, and walked forward, unable to see anything at his feet, and not using the means he had to enable him to see, walked off from the sidewalk. It would seem that he exercised but little care.

In such a case the jury should have had none but proper

evidence for their consideration, and should have been accurately instructed, and in both of these particulars we think that there was prejudicial error committed against appellant. The court admitted, against the objection of appellant, evidence of complaints during the summer of 1889, by various persons, to officers of the city, about the condition of an electric light at the crossing of Holton street and Monmouth street, northeasterly from the place of the accident. This was the next crossing northeasterly, and it was claimed that the light at that crossing was not burning on the night of the accident. The evidence did not relate to the time of the accident, and its only effect or purpose was to show a general neglect of duty respecting that street light, and it should not have been admitted. Another objection to the admission of evidence was made, which we do not regard as tenable, and it is this: The court admitted evidence as to the average wages of appellee as a fireman. He was temporarily firing a switch engine at $1.50 per day at the time of the injury, but that was only temporarily so, and there was no error in allowing proof of his average earnings at his regular business, to which he would have returned, but for his disability during the time he was disabled.

The court, in the thirteenth instruction given at the request of appellee, told the jury that appellee had a right to presume that the street and sidewalk were reasonably safe for travelers to use, and to presume that if there was any extraordinary or unusual danger in the street or sidewalk, that some signal or notice, or reasonably sufficient light would be given that would guard travelers against receiving injury. Appellee had testified that he knew that the sewer was being laid in the street, and there was other evidence tending to charge him with notice of the condition of things in the street in that locality. It is manifest that one who knows that a condition exists can not rightfully act upon the assumption that it does not exist. A person has no right, as a matter of law, to presume a condition of things against his own knowledge of a different condition, nor is there any

requirement to give notice of a fact to one already cognizant of that fact. The evidence tended to prove notice to appellee of the ditch, and the jury should not have been told unqualifiedly that he had a right to presume that there was no such thing there in the absence of signal, warning or light. It is urged that the fault in this instruction was cured by an instruction given for appellant. This instruction, and the one referred to, were conflicting, and were absolute as to legal rights. The question of law as to which of them was correct was left to the jury for decision. It is not the province of the jury to decide questions of law and determine which statement of the law given them by the court is correct. We think that the error in giving the instruction for appellee was not cured by giving a conflicting one and leaving the jury to decide which was right.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*